UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| MAHMOOD AHMED FADHL SALEH, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>ANTONY BLINKEN, et al.,<br><br>Defendants. | Case No.  5:24-cv-02450-EJD<br><br>**ORDER DENYING MOTION TO DISMISS**<br><br>Re: Dkt. No. 30 |

Plaintiff Mahmood Saleh ("Saleh"), a U.S. citizen, brings this action challenging a U.S. Department of State ("DOS") consular officer's refusal to accept for adjudication a direct-filed Form I-130, Petition for Alien Relative ("I-130 Petition"), on behalf of Saleh's minor daughter, Plaintiff S.M.A.F (collectively, "Plaintiffs"). Compl., ECF No. 1.  Before the Court is a motion to dismiss filed by Defendants U.S. Secretary of State, Ambassador to Djibouti, the Embassy of the U.S. of Djibouti, and the DOS.  Mot. to Dismiss, ECF No. 30.  This motion is fully briefed. Opp'n, ECF No. 33; Reply, ECF No. 41.

After carefully reviewing the relevant documents, the Court finds this matter suitable for decision without oral arguments pursuant to Local Rule 7-1(b).  For the reasons stated below, the Court **DENIES** Defendants' motion.

I.     **BACKGROUND**

Plaintiffs allege that Defendants arbitrarily rejected Saleh's request to file his I-130 Petition directly with the U.S. Embassy of Djibouti in contradiction to their written policy, resulting in the forced separation of his four-year-old child from her parents in a war-torn region. The Court will first provide a brief overview of the relevant process for obtaining the family-based

Case No.: 5:24-cv-02450-EJD
ORDER DENYING MOTION TO DISMISS

1

immigration visa Saleh seeks before moving to the facts of Plaintiffs' complaint.

### A.  I-130 Petition Process for Family-Based Visa

An I-130 Petition is a form submitted by a U.S. citizen or Lawful Permanent Resident ("LPR") petitioning to establish a familial relationship with an immediate relative or close relative intending to immigrate to the U.S. *See* USCIS, I-130, Petition for Alien Relative, Form Details ("I-130 Form Details"), *available at* https://www.uscis.gov/i-130. There are generally two steps to securing a family-based visa through an I-130 Petition.

First, the U.S. citizen files an I-130 Petition with the U.S. Citizenship and Immigration Services ("USCIS") on behalf of the noncitizen-relative living abroad, asking to have the noncitizen classified as an immigrant based on the qualifying familial relationship. *Id.* The petitioner can file an I-130 Petition online or by mail to a lockbox in the U.S. for processing, and the petitioner can request expedited processing. *Id.*

Second, if the I-130 Petition is approved, the noncitizen then applies for an immigrant visa with a DOS consular officer, which involves appearing at a U.S. embassy for an interview with a consular officer. *Id.* The consular officer has the authority to grant or refuse a visa application. *See* 8 U.S.C. § 1201(a)(1); 22 C.F.R. §§ 42.71, 42.81.

In limited circumstances, a U.S. citizen petitioner may seek to bypass the first step of filing the petition with USCIS and directly file the I-130 Petition with an embassy or consulate overseas (also referred to as a "direct-file"). *See generally* 9 Foreign Affairs Manual ("FAM") 504.2-4(B)(1)(b). In the DOS's Foreign Affairs Manual, the Bureau of Consular Affairs provides that an I-130 Petition may be directly filed in "exceptional circumstances." *Id.* "Exceptional circumstances" include: (1) military emergencies; (2) medical emergencies; (3) threats to personal safety; (4) the beneficiary being close to ageing out; (5) the petitioner's recent naturalization; (6) the adoption of a child; (7) the short notice of position relocation; and (8) other circumstances of an urgent non-routine nature. *See id.* at 505.2-4(B)(1)(b)(4). Relevant here, the FAM defines "threats to personal safety" as occurring when, for example, "a petitioner and beneficiary may have been forced to flee their country of residence due to civil strife or natural disaster and are in

Case No.: 5:24-cv-02450-EJD
ORDER DENYING MOTION TO DISMISS

precarious circumstances in a different country outside of the United States." *Id.* at 505.2-4(B)(1)(b)(4)(c).  If the consular officer encounters a case they believe meets the exceptional circumstance criteria, then the officer may exercise discretion to accept and adjudicate the filing. *See id.* at 504.2-4(B)(1)(b).

### B.   Saleh's I-130 Petition

Saleh is a U.S. citizen who naturalized on January 30, 2014.  Compl. ¶¶ 40, 41.  Saleh married his wife, Najiah Mutahar Ali Hussein (referred to in the Complaint as "Najiah"), in 2017. *Id.* ¶ 42.  Saleh filed an I-130 Petition for Najiah in January 2019, which was approved shortly after.  *Id.*  The couple's first child, S.M.A.F., was born on May 28, 2019, after USCIS approved Saleh's I-130 Petition, but before Najiah's visa interview at a consulate.  *Id.* ¶¶ 44, 46.  At the time, Saleh believed that S.M.A.F. was a U.S. citizen born abroad; but it appears Saleh recently discovered that, perhaps due to the timing of Najiah's I-130 Petition and visa interview, S.M.A.F. is a citizen and national of Yemen, and Saleh needs to file a separate I-130 Petition so that S.M.A.F. can immigrate to the U.S.[1]  *Id.* ¶¶ 47, 48.

Because Yemen was unsafe due to the increasingly dangerous conditions escalated by the Houthis, Saleh and his family were residing in Djibouti at this time at a considerable financial cost to Saleh while they tried to obtain the necessary visa.  *Id.* ¶¶ 50, 53.  However, Najiah needed to return to the U.S. before the expiration of her immigrant visa in May 2024, and Saleh needed to return to the U.S. for work.  *Id.* ¶¶ 50, 52.  Given these circumstances, Saleh sought to file his I-130 Petition directly with the U.S. Embassy of Djibouti ("the Embassy").  *Id.*  Saleh believes these circumstances are "exceptional" under the FAM's definition of "threats to personal safety" because Saleh's family was forced to flee Yemen due to civil strife, and now S.M.A.F. is left in precarious circumstances in Djibouti.  *See* Compl. ¶¶ 54–60; FAM 505.2-4(B)(1)(b)(4)(c).

On January 22, 2024, counsel for Saleh contacted the U.S. Embassy of Djibouti and

---

[1] Plaintiffs also allege facts regarding successfully obtaining status for Saleh and Najiah's second child which are irrelevant to the present motion.

Case No.:   5:24-cv-02450-EJD
ORDER DENYING MOTION TO DISMISS

3

requested an appointment to directly file an I-130 Petition on behalf of S.M.A.F. *Id.* ¶ 55. He received a generic response that day with information about the visa process that did not address the request to direct-file the I-130 Petition. *Id.* Saleh's counsel emailed the Embassy again on February 15, 2024, with a request to direct-file Saleh's I-130 Petition. *Id.* ¶ 56. The next day, counsel also emailed a U.S. Attorney with the same request. *Id.* ¶ 57.

On February 28, 2024, the U.S. Attorney responded, advising that the Embassy reported the interview would have to be scheduled through the National Visa Center. *Id.* ¶ 58. However, Saleh's counsel confirmed that the National Visa Center had no control over direct-filed I-130 Petition appointments. *Id.* On March 6, 2024, the U.S. Attorney reported to Saleh's counsel that the Embassy was denying the request for a direct-filed I-130 Petition. *Id.* ¶ 59. On March 13, 2024, the Embassy also emailed counsel to advise that it was denying the request for a direct-filed I-130 Petition. *Id.* ¶ 60. This action was subsequently filed on April 25, 2024.

### C. Pattern of Conduct Toward Yemen Americans

Plaintiffs allege that Defendants' conduct in denying Saleh's request to directly file his I-130 Petition is symptomatic of their pattern and practice of categorically delaying and denying applications for immigration benefits filed by U.S. citizens and LPRs of Yemeni race and/or national origin and their beneficiary family members. *Id.* ¶ 15.

For example, Plaintiffs allege that USCIS subjects petitioners of Yemeni national origin to a heightened standard that considers all Yemeni petitions "fraudulent until proven otherwise," despite the data showing that most Yemeni American citizens' applications for family members are bona fide. *Id.* ¶¶ 25, 26. Plaintiffs also allege that USCIS intentionally delays Yemeni applications by employing tactics such as: repeatedly failing to acknowledge receipt of benefits applications requests for years; failing to issue or reasonably process applications or requests; relocating benefits requests to other agencies for purposes of compiling data and information to be used in unrelated adjudications and investigations; requiring the taking of sworn statements for the purpose of collecting information to be used in unrelated investigations; issuing duplicative Requests For Evidence and Notices of Intent to Deny; failing to timely and promptly forward

Case No.: 5:24-cv-02450-EJD
ORDER DENYING MOTION TO DISMISS
4

administrative appeals of denied petitions to the Board of Immigration Appeals ("BIA"); requiring DNA testing for the approval of petitions filed by Yemenis without the necessary statutory and regulatory authority; systematically failing to request optional DNA after receipt of petitions, while precluding the unsolicited submission of DNA testing results; failing to serve required notices; and "losing" files at Defendants' various offices. *Id.* ¶ 29.

### D.     Plaintiffs' Claims

Plaintiffs argue that Defendants' denial of Saleh's request to direct-file his I-130 Petition violates the Administrative Procedure Act ("APA"), 5 U.S.C. § 706—specifically, that their "failure to follow their own policy explicitly set forth in the Foreign Affairs Manual and officially and publicly adopted agency policies," Compl. ¶ 72, and their "denial of Plaintiffs' request for direct filing of the I-130 Petition for Plaintiff S.M.A.F," *id.* ¶ 80, were arbitrary, capricious, and abuses of discretion under 5 U.S.C. § 706(2). *See id.* ¶¶ 65–82. Plaintiffs also allege that this conduct violates the Due Process Clause of the Fifth Amendment and the Declaratory Judgment Act, 28 U.S.C. § 2201. *Id.* ¶¶ 83–115. Plaintiffs request the Court mandate that they be permitted to direct-file Saleh's I-130 Petition with the U.S. Embassy of Djibouti, among other requested relief. *Id.* at 20.

## II.    LEGAL STANDARD

To survive a motion to dismiss brought under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," which requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.* The Court must "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). However, courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678.

Case No.: 5:24-cv-02450-EJD
ORDER DENYING MOTION TO DISMISS

5

### III. DISCUSSION

Defendants move to dismiss Plaintiffs' claims on the following grounds: (1) the consular officer's decision to deny Saleh's request is discretionary and not subject to judicial review under the APA; (2) there is no constitutionally protected interest in I-130 Petitions; and (3) the doctrine of consular non-reviewability precludes all of Plaintiffs' claims. The Court will review each argument in turn.[2]

#### A. Judicial Review of APA Claim

First, Defendants argue that the Court does not have jurisdiction to review Plaintiffs' APA claim because the agency's actions here are committed to agency discretion by law.

The APA provides that "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof." 5 U.S.C. § 702. There is a "strong presumption that Congress intends judicial review of administrative action." *Helgeson v. Bureau of Indian Affairs,* 153 F.3d 1000, 1003 (9th Cir.1998) (quoting *Traynor v. Turnage,* 485 U.S. 535, 542 (1988)); *see also Abbott Laboratories v. Gardner,* 387 U.S. 136, 140–41 (1967) ("[T]he Administrative Procedure Act . . . embodies the basic presumption of judicial review . . . . [O]nly upon a showing of 'clear and convincing evidence' of a contrary legislative intent should the courts restrict access to judicial review."), *abrogated on other grounds by Califano v. Sanders,* 430 U.S. 99, 97 (1977); *ANA Int'l, Inc. v. Way,* 393 F.3d 886, 890 (9th Cir. 2004) ("The default rule is that agency actions are reviewable . . . even if no statute specifically authorizes judicial review"), *abrogated on other grounds by Bouarfa v. Mayorkas*, 604 U.S. 6 (2024).

There are two narrow circumstances that can overcome the strong presumption of reviewability: (1) when Congress expressly bars review by statute, 5 U.S.C. § 701(a)(1); and (2) when agency actions are "committed to agency discretion by law," *id.* § 701(a)(2). *See Pinnacle Armor, Inc. v. United States*, 648 F.3d 708, 718–19 (9th Cir. 2011). The only exception relevant

---

[2] Plaintiffs' opposition defends their complaint in ways that were not raised by Defendants and therefore will not be discussed in this Order.

Case No.: 5:24-cv-02450-EJD
ORDER DENYING MOTION TO DISMISS
6

here is the second.

The Supreme Court has acknowledged the tension between this exception for discretionary decisions and the APA's purpose of examining abuses of discretion, observing that "[a] court could never determine that an agency abused its discretion if all matters committed to agency discretion were unreviewable." *Weyerhaeuser Co. v. U.S. Fish & Wildlife Serv.*, 586 U.S. 9, 23 (2018) (citing *Heckler v. Chaney*, 470 U.S. 821, 829 (1985)). To resolve this tension, the Supreme Court reads Section 701(a)(2) "quite narrowly, restricting it to 'those rare circumstances where the relevant statute is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion.'" *Id.* (quoting *Lincoln v. Vigil*, 508 U.S. 182, 191 (1993)). In other words, judicial review is only unavailable in rare circumstances where there is no "judicially manageable standard[]" by which to judge the agency's action. *Heckler*, 470 U.S. at 830. Under this reading, "the mere fact that a statute contains discretionary language does not make agency action unreviewable." *Beno v. Shalala*, 30 F.3d 1057, 1066 (9th Cir. 1994).

Courts often look to the language in the statutes and regulations to determine whether there are meaningful standards for review; but courts are also permitted to examine agency rules or well-established agency policies to provide sufficient standards to transform unreviewable discretion into discretion reviewable for abuse. *INS v. Yueh–Shaio Yang,* 519 U.S. 26, 32 (1996) ("Though the agency's discretion is unfettered at the outset, if it announces and follows—by rule or by settled course of adjudication—a general policy by which its exercise of discretion will be governed, an irrational departure from that policy (as opposed to an avowed alteration of it) could constitute action that must be overturned . . . ."); *see also Jajati v. United States Customs & Border Prot.*, 102 F.4th 1011, 1017 n.1 (9th Cir. 2024) ("Even if a statute grants an agency unfettered discretion, an agency's decision may nonetheless be reviewed if regulations or agency practice provide a meaningful standard by which this court may review its exercise of discretion.") (internal quotation marks omitted); *Pinnacle*, 648 F.3d at 719 (noting that courts "may also look to regulations, established agency policies, or judicial decisions for a meaningful standard to review") (internal quotation marks and citation omitted).

Case No.: 5:24-cv-02450-EJD
ORDER DENYING MOTION TO DISMISS

7

Here, the relevant statutes and regulations do not provide any standards for the Court to review the agency's decision. The Immigration and Nationality Act ("INA") establishes that "any citizen of the United States claiming that an alien is entitled to classification by reason of a [familial] relationship . . . may file a petition with the Attorney General for such classification." 8 U.S.C. § 1154(a)(1)(A)(i). But the statute is silent as to the filing procedures to which petitioners are entitled. The regulations likewise state simply that a petition "must be filed on the form prescribed by USCIS in accordance with the form instructions," without describing those procedures further. 8 C.F.R. § 204.1(b).

However, the FAM, which the DOS describes as an "authoritative source for the Department's organization structures, policies, and procedures that govern the operations of the State Department, the Foreign Service and, when applicable, other federal agencies," does provide meaningful standards for review. *See* U.S. Dept. of State, Foreign Affairs Manual, *available at* https://fam.state.gov/. As discussed above, the FAM provides that, "[i]f a consular section encounters a case they believe meets the exceptional circumstances criteria outlined below, then the Consular Chief or another designated consular officer may exercise discretion to accept and adjudicate the filing." FAM 504.2-4(B)(1)(b). The manual goes on to provide eight specific "examples of the types of exceptional circumstances where consular officers may opt to accept Form I-130 immediate relative petitions." *Id.* at 504.2-4(B)(1)(b)(4). These examples include "[t]hreats to personal safety," i.e., when "a petitioner and beneficiary may have been forced to flee their country of residence due to civil strife or natural disaster and are in precarious circumstances in a different country outside of the United States." *Id.* at 504.2-4(B)(1)(b)(4)(c). The Court agrees with Plaintiffs that this well-established policy supplies a meaningful standard to review agency actions under *Heckler* and its progeny.

The Court finds Defendants' arguments to the contrary unpersuasive. Defendants primarily contend that the decision to accept a direct-filed I-130 Petition is committed solely to agency discretion because there are no relevant statutes or regulations that *require* the DOS to accept any I-130 Petition filed directly, and the FAM guidelines likewise only outline *permissible*

Case No.: 5:24-cv-02450-EJD
ORDER DENYING MOTION TO DISMISS

8

reasons to accept a direct filing. Defendants rely heavily on two New York district court cases that held there is no legal framework to examine a consular officer's decision regarding whether to accept a directly filed I-130 Petition because the FAM's criteria are permissive and no other law or regulation requires consular officers accept these petitions directly. *Ahmed v. Cissna*, 327 F. Supp. 3d 650, 671 (S.D.N.Y. 2018), *aff'd sub nom. Ahmed v. Cuccinelli*, 792 F. App'x 908, 910 (2d Cir. 2020) (finding no jurisdiction because there was no authority requiring consular officers to accept I-130 Petitions); *Al Saidi v. U.S. Embassy in Djibouti*, 544 F. Supp. 3d 289, 297 (E.D.N.Y. 2021) (rejecting plaintiffs' challenge to the DOS's determination that a direct-filed I-130 Petition was not clearly approvable[3] and holding that the Court lacked jurisdiction over the plaintiffs' claims USCIS enjoys broad discretion in its processing of I-130 Petitions). One of these decisions was affirmed by the Second Circuit. *Ahmed*, 792 F. App'x at 910. [4]

However, the Court's understanding of this issue is informed by the Ninth Circuit, not the Second Circuit. Though neither Defendants nor Plaintiffs provide the Court any relevant Ninth Circuit authority on this point, the Court observes that the Ninth Circuit has generally found an agency's broad discretion in choosing whether to act, if at all, does not on its own preclude judicial review:

> The fact that an agency has broad discretion in choosing whether to act does not establish that the agency may justify its choice on specious grounds. To concede otherwise would be to disregard entirely the value of political accountability, which itself is the very premise of administrative discretion in all its forms.

*Newman v. Apfel*, 223 F.3d 937, 943 (9th Cir. 2000); *see also Jajati*, 102 F.4th at 1017

---

[3] After a consular officer decides there are "exceptional circumstances" justifying a direct filing, they must then decide whether the petition is "clearly approvable" before proceeding. The "clearly approvable" issue is not present in this case.

[4] Defendants also cite to *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 (2004), for the proposition that "a claim under § 706(1) can proceed only where a plaintiff asserts that an agency failed to take a *discrete* agency action that it is *required to take*." *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 (2004) (emphasis in original). However, Plaintiffs here bring APA claims under Section 706(2), arguing that Defendants' conduct "violates the APA as arbitrary, capricious, and an abuse of discretion." Compl. ¶ 80; *see also id.* ¶ 72. Defendants have failed to explain the connection between this holding and the circumstances here.

Case No.: 5:24-cv-02450-EJD
ORDER DENYING MOTION TO DISMISS

9

1  (summarizing *Newman*'s principles); *Socop-Gonzalez v. I.N.S.*, 272 F.3d 1176 (9th Cir. 2001)

2  (reviewing BIA's discretionary decision to not reopen deportation proceedings).[5] So too here, the

3  fact that a consular officer is not obligated to accept direct I-130 filings does not insulate that

4  decision from judicial review when the Court has a standard to review the exercise of that

5  discretion.

6        The Court repeats, this catchall exception in Section 701(a)(2) is extraordinarily narrow.

7  As noted by the Ninth Circuit on multiple occasions, this exception has only applied in rare

8  instances of discretionary decisions regarding, for example: docket control, national security,

9  allocation of lump-sum appropriation, and instituting enforcement proceedings or granting

10 reconsideration of a final decision. *See, e.g., Pinnacle*, 648 F.3d at 720–21 (citing cases);

11 *Newman*, 223 F.3d at 943 (citing cases). This is not one of those rare cases. Here, consular

12 officers are given the authority to accept direct-filed I-130 Petitions under "exceptional

13 circumstances," and the FAM provides an enumerated list of what those circumstances include.

14 Using these standards, a consular officer's decision to deny a direct filing based upon a finding

15 that the circumstances do not meet the FAM's definition of "threats to personal safety" is

16 reviewable by the Court under the APA.

17       Therefore, the Court finds that Section 701(a)(2) does not categorically preclude the Court

18 from reviewing the consular officer's decision and **DENIES** Defendants' motion to dismiss

19 Plaintiffs' APA claim on this ground.

### B. Constitutionally Protected Interest in I-130 Petition

21       Second, Defendants argue that Plaintiffs' due process claims fail because there is no

22 constitutionally protected liberty or property interest in the adjudication of an I-130 Petition.

---

[5] To be clear, this Order does not examine judicial authority in the context of 8 U.S.C. § 1252(a)(2)(B), which strips judicial jurisdiction over agency denials of discretionary relief in defined circumstances. *See, e.g., ANA Int'l*, 393 F.3d at 891 (explaining differences in standards); *Spencer Enters. v. United States*, 345 F.3d 683, 691 (9th Cir. 2003) (same). As Defendants highlight, "[t]he jurisdiction-stripping provisions in Section 1252(a)(2)(B) has no relevance to this case since Plaintiffs are not challenging a USCIS decision on an immigration benefit specified in the statute, such as adjustment of status." Reply 2.

Case No.: 5:24-cv-02450-EJD
ORDER DENYING MOTION TO DISMISS

10

1    As an initial matter, it is undisputed that S.M.A.F. has no constitutional right to immigrate to the U.S. Regarding Saleh, Defendants argue that he does not have a due process right in the visa processing of others, citing the Supreme Court's holding that "a citizen does not have a fundamental liberty interest in her noncitizen spouse being admitted to the country." *Dep't of State v. Muñoz*, 602 U.S. 899, 909 (2024). Defendants highlight that the Supreme Court also noted that a "claim to a procedural due process right in someone else's legal proceeding would have unsettling collateral consequences." *Id.* at 916.

However, as Plaintiffs highlight, the circumstances here are distinguishable from those in *Muñoz*. In *Muñoz*, a U.S. citizen spouse filed a petition with USCIS to have her spouse classified as an immediate relative, which was granted. *Id.* at 904–05. After the petition was granted, the spouse applied for her visa with the consulate in San Salvador, who denied her application on inadmissibility grounds. *Id.* The U.S. citizen's claims challenged the consular's denial of his spouse's visa. *See id.*

Here, Saleh is challenging the consular officer's decision to refuse direct-filing of his *own* petition to establish a qualifying familial relationship—the first step in the I-130 Petition process that the Court described above. *See also id.* at 904 (describing the two-step process). Saleh is not challenging the consular officer's decision in step two, when the relative applies for a visa and attends an interview at the consulate. *See id.* In other words, this case does not concern a noncitizen's visa application; it concerns a U.S. citizen's own petition to establish a qualifying familial relationship. As Plaintiffs highlight, the Ninth Circuit has clearly held that a U.S. citizen filing an I-130 Petition is entitled to due process:

> [G]rant of an I–130 petition for immediate relative status is a nondiscretionary decision. Immediate relative status for an alien spouse is a right to which citizen applicants are entitled as long as the petitioner and spouse beneficiary meet the statutory and regulatory requirements for eligibility. This protected [property] interest is entitled to the protections of due process.

*Ching v. Mayorkas*, 725 F.3d 1149, 1156 (9th Cir. 2013). Regardless of whether Saleh has a liberty interest in residing with his daughter in the U.S. under *Muñoz*, he has a clearly established

Case No.: 5:24-cv-02450-EJD
ORDER DENYING MOTION TO DISMISS
11

1    property interest in his own petition to establish that S.M.A.F. is his daughter under *Ching*, and
2    this interest is entitled to the protections of due process. *Id.*; *see also Hanan v. USCIS*, No. 23-cv-
3    2414-HSG, 2024 WL 4293917, at *11 (N.D. Cal. Sep. 25, 2024) ("Given the different procedural
4    postures of *Ching* and *Muñoz*, the Court cannot say that the reasoning of *Ching* is clearly
5    irreconcilable with *Muñoz*. Plaintiffs may have a property interest in the approval of an I-130
6    while lacking a liberty interest in residing in the United States together. The Court therefore
7    continues to conclude, as *Ching* found, that the grant of an I-130 petition is a 'protected interest [ ]
8    entitled to the protections of due process.'"). [6]

9    Therefore, the Court **DENIES** Defendants' motion to dismiss Saleh's due process claims
10   on this ground.

### C.  Doctrine of Consular Non-reviewability

Finally, Defendants argue that all of Plaintiffs' claims are precluded under the doctrine of consular non-reviewability.

The Ninth Circuit has held that a consular officer's decision to deny a visa application "is not subject to judicial review . . . based on 'the recognition that the power to exclude or expel aliens, as a matter affecting international relations and national security, is vested in the Executive and Legislative branches of government.'" *Allen v. Milas*, 896 F.3d 1094, 1104 (9th Cir. 2018). The Supreme Court recently reiterated this doctrine in *Muñoz*, stating: "The Immigration and Nationality Act (INA) does not authorize judicial review of a consular officer's denial of a visa; thus, as a rule, the federal courts cannot review those decisions." *Muñoz*, 602 U.S. at 908.

However, as Plaintiffs highlight, and as the Court discussed above, there has been no denial of a visa application here; only a denial of Saleh's request to directly file his own I-130 Petition with the U.S. Embassy of Djibouti rather than with USCIS in the U.S.  Opp'n 2.

---

[6] In a footnote, Defendants conclusorily state that "Plaintiff's claim is unripe and not non-justiciable." Mot. 8 n.3.  In their reply, Defendants make what could be perceived as a related argument that Saleh has no right to challenge the adjudication of an I-130 Petition because he has not filed one yet.  However, Defendants fail to cite any authority in support or expand any further on this argument.

Case No.: 5:24-cv-02450-EJD
ORDER DENYING MOTION TO DISMISS
12

1   Defendants have failed to cite any case applying the doctrine of consular non-reviewability to

2   these circumstances.

3        Therefore, the Court **DENIES** Defendants' motion to dismiss Plaintiffs' claims on this

4   ground.[7]

## IV.   CONCLUSION

Based on the foregoing, the Court **DENIES** Defendants' motion to dismiss.

**IT IS SO ORDERED.**

Dated: March 25, 2025

                                     EDWARD J. DAVILA
                                     United States District Judge

---

[7] Defendants also raise an argument in a footnote that the Court should dismiss Plaintiffs' Declaratory Judgment Act claim because "[t]he Declaratory Judgment Act is not a source of substantive rights," and "Plaintiffs have not provided any basis for the Court to issue the requested declaration, as they have not proved any substantive violation by Defendants"; but Defendants drop this argument in their reply. Mot. 9 n.4. Regardless, for the same reasons the Court denies Defendants' motion to dismiss the due process claims, the Court rejects Defendants' arguments regarding the Declaratory Judgment Act.

Case No.: 5:24-cv-02450-EJD
ORDER DENYING MOTION TO DISMISS

13